## SINCLAIR and ROSE *vs.* ARMITAGE and others.

A person who has gone into possession of real estate, under a parol agreement to purchase, has such an interest in the property as is capable of being mortgaged.

The equity of such mortgagee is, that he has the right, if the vendee refuse to fulfil the agreement to purchase, himself to assume his position and redeem the property.

Such mortgage will prevail against a subsequent purchaser with notice.

*Runyon*, for complainants.

*Hubbell* and *Pennington*, for defendants.

THE CHANCELLOR. There is no dispute about the facts of this case. On the 8th of October, 1853, John C. Allen entered into a parol agreement with John and Edward H. Armitage to sell them a property in the city of Newark for $3200. The deed was to be delivered on the 1st of April, 1854, at which time $500 in cash was to be paid. The Armitages were to assume the payment of a mortgage, already on the property, for $550, and pay the interest on it from the date of the agreement, and the balance was to be secured by bond and mortgage—$500 to be paid on the first of July following, and the residue in one year from the said first of July. It was further agreed between the parties, that the party who failed to perform should pay to the other the sum of $1500, as liquidated damages. The Armitages took possession of the property under the agreement, and put improvements upon it, which amounted to upwards of $3000. On the 1st of April, 1854, Allen tendered a deed, and the Armitages said they could not comply. In the month of May, 1854, and previous to the 23d of the month, they paid Allen $945.67. On the 23d of May, the Armitages mortgaged the property to the complainants to secure a debt, then due and owing, of $1707.83 and any future indebtedness, not to exceed in the aggregate $3000. Subsequently, in the same year, but the precise date is not stated, the Armitages delivered to James Brown, one of the defendants, a writing as follows: " To Mr. John C. Allen,—Sir: We hereby waive all claim upon the premises belonging to you, and now occupied by us in the

city of Newark, and all right therein which we have, or may have, by virtue of an inchoate and unfulfilled agreement for the purchase of the same, made during the month of October, 1853, and request you to convey the same to James Brown upon such terms as may be agreed upon between you. Newark, 1854." Allen conveyed the property to Brown for $3200. The money which the Armitages had paid to Allen was credited on a debt which they owed to Brown and his partner, under the name of Prentice & Brown, and the balance of the purchase money was secured on the property.

The complainants now file their bill on their mortgage, and the question is—if it is any, and if any what lien upon the property?

It is insisted, on behalf of the defendants, that the mortgage is not valid, because the Armitages, at the time they executed the mortgage, had no title to the property, and that they were in possession only under a parol agreement to purchase.

At the time the mortgage was executed, the Armitages were in possession, and had paid a part of the purchase money. There is no question but that they were entitled to the performance of the agreement. There is no doubt or difficulty upon that score. They were put into possession under the agreement. The deed was tendered to them. They paid $945.67 of the purchase money. It was assigned by them to Brown, and the agreement was carried out with him as their assignee, and he received the deed for the property. The terms of the agreement are charged in the bill, and admitted by the answers. The rights of the parties are as well defined and are as certain as if the agreement had been in writing instead of parol.

At the last term of this court, in the case of *Neligh* v. *Michenor and others*, it was decided, that a person in possession under an agreement in writing to purchase had such an interest in the property as was capable of being

mortgaged. I refer to the opinion in that case for my rea-
sons why I think such a mortgage can be sustained, and
for the authorities upon the point. This case differs from
that only in the respect, that in that case the agreement
was in *writing*, while in this it is in parol. I do not think
the difference varies the principle on which such a mort-
gage can be sustained. If the agreement is in parol,
there must be no uncertainty about it whatever. In
this case the agreement, as to its terms and in every re-
spect, is as satisfactorily established before the court as if
it had been in writing. It is set out in all the pleadings,
by the different parties, without any variation in the
slightest particular.

What was the position of the Armitages, as respects
this property, prior to the conveyance to Brown and
when the mortgage was given? They did not pay the
$500, as was stipulated by the agreement, on the first of
April. But in May they paid upwards of nine hundred
dollars, and Allen accepted, and thereby waived all diffi-
culty as to time, if time was at all essential under the cir-
cumstances. They had a right to a conveyance of the
property, upon their securing the balance of the purchase
money according to the agreement. Can there be a
doubt but that they might have assigned their benefit in
this agreement to the complainants, and placed them in
their stead in their relationship to the property, and as to
their right of a conveyance from Allen? If such an
assignment would have been valid, and could have been
enforced in equity, I cannot see how the mortgage can
be invalid. The mortgage is nothing but an assignment
of the mortgagor's interest in the property, to be defeated
upon fulfilling the proviso. The rights of a party, in
this court, are not affected by the name or the form of
the conveyance. This court looks through technicalities,
and lays hold of the essence of the thing. It can make
no difference to this court, in determining the rights of
the parties, whether the Armitages transferred their in-

terest in the agreement and property by a technical assignment or by a deed or mortgage, or any other writing. They had a beneficial agreement, which beyond all doubt they had the right to assign. They meant to do this, and, to carry out that intention, executed the mortgage in question. This court will not permit them to defeat that intention, and defraud other parties, upon the technical ground, that there was no title or estate vested in them to mortgage. They had a right to assign their right in the agreement. They intended to do this by the mortgage, and the mortgage does do it as effectually as any other form of writing could. How far our registry laws are applicable to such a mortgage, is another question.

The equities of the complainants under the mortgage were, that they had a right, if the Armitages refused to fulfil the agreement with Allen, themselves to assume his position and redeem the property. Neither Allen nor the Armitages could defeat that right. If Allen had called upon them to carry out the agreement, and they had refused or neglected, he might then have disposed of the property free from their lien. But he could not covertly, or without notice to them, defeat their mortgage, or rather deprive them of their equities.

Now, with full knowledge of the mortgage, and for the very purpose of supplanting the complainants, and of securing in part a debt which the Armitages owed Prentice & Brown, they procured the Armitages to give them an order upon Allen to convey the property to Brown. Allen carries out with Brown the same agreement which he had made with the Armitages. He gives credit for the money paid, and upon the balance being secured on the property, he conveys it to Brown. There can be no doubt as to the equities of the parties under such circumstances. The rights of the complainants were not changed by the conveyance to Brown. Brown must either pay what was due the complainants upon their mortgage at

the time he took the conveyance, or the complainants must be permitted to redeem the property. If they redeem, they must be allowed the payment which the Armitages made to Allen, and for which Brown received credit. Brown must be charged with the rents actually received, or with the rent for such time as he has had actual possession. He must be charged with the improvements put upon the property by the Armitages up to the time of the conveyance to Brown, having regard to their actual value to the property. And Brown must be allowed what he has paid on account of the purchase money, or assumed to pay, and also what he has paid on account of the improvements put on the property.